IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03702-KLM

MICHELLE BLAIR,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#10],[2] filed March 20, 2020, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claims for disability insurance benefits and disabled widow's benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq.  On April 6, 2020, Plaintiff filed an Opening Brief [#11] (the "Brief").  Defendant filed a Response [#16] in opposition, and Plaintiff filed a Reply

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#9, #22].

[2] "[#10]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

[#21]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Background

On August 4, 2016, Plaintiff filed applications for disability insurance benefits under Title II, for disabled widow's benefits under Title II, and for supplemental security income under Title XVI, alleging disability beginning January 1, 2014 (although later amended to May 9, 2014). Tr. 38.[3] On January 8, 2019, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 49. The ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2018, for purposes of obtaining disability insurance benefits under Title II; that as an unmarried widow over the age of fifty of the deceased insured worker, she met the requirements for disabled widow's benefits; and that she had not engaged in substantial gainful activity ("SGA") since May 9, 2014, the amended alleged onset date. Tr. 41. The ALJ found that Plaintiff suffers from five severe impairments: (1) Grave's disease with visual symptoms, (2) degenerative disc disease of the lumbar, thoracic, and cervical spine, (3) status post bunionectomy of the right foot, (4) bilateral osteoarthritis of the knees, and (5) osteoarthritis of the right shoulder. Tr. 41. However, the ALJ also found that Plaintiff's impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404,

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 10 through 10-27 by the sequential transcript numbers instead of the separate docket numbers.

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 43. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> [S]he can lift up to twenty (20) pounds occasionally and ten (10) pounds frequently, stand and walk for four (4) hours out of an eight (8) hour workday, and sit for six (6) hours out of an eight (8) hour workday. She can occasionally climb stairs, stoop, crouch, kneel, and crawl, but never climb ladders, ropes, or scaffolds. The claimant can frequently reach overheard with her right upper extremity, must avoid unprotected heights or dangerous moving machinery, and can occasionally use far vision acuity bilaterally.

Tr. 44. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a general clerk and, in addition or in the alternative, was able to perform the representative occupations of Routing Clerk, Assembler Electrical Accessories I, and Cashier II. Tr. 47-49. He therefore found Plaintiff not disabled at both step four and step five of the sequential evaluation. Tr. 49. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may

not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.     Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."   *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).   "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his

or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.   Analysis

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate Plaintiff's subjective complaints, (2) finding that Plaintiff's depression and anxiety were not severe impairments, and (3) rejecting the opinion of Plaintiff's treating eye surgeon, Dr. Robert

Enzenauer ("Dr. Enzenauer"). *Brief* [#11] at 1. The Court begins with Plaintiff's second argument.

## A.     Step Two

Plaintiff argues that the ALJ erred at step two of his analysis by finding that Plaintiff's depression and anxiety were not severe impairments. *Brief* [#11] at 17.

The Tenth Circuit Court of Appeals has addressed how an ALJ's purported error at step two in failing to find a specific impairment to be "severe" is harmless so long as the ALJ found at least one other impairment to be "severe" and thus proceeded to later steps of his analysis:

> An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c)[; see also 20 C.F.R. § 416.920(c)]. A claimant must make only a de minimis showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . , we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added)[; see also 20 C.F.R. § 416.920(a)(4)(ii)]. By its plain terms, the regulation requires a claimant to show only "a severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe. Here, the ALJ found six other impairments severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In the instant case, the ALJ found five other impairments to be severe: (1) Grave's disease with visual symptoms, (2) degenerative disc disease of the lumbar, thoracic, and cervical spine, (3) status post

bunionectomy of the right foot, (4) bilateral osteoarthritis of the knees, and (5) osteoarthritis of the right shoulder.  Tr. 41.  Thus, the ALJ found that Plaintiff could not conclusively be denied benefits at step two and proceeded to steps three and four of his analysis.  Therefore, Plaintiff's argument that the ALJ erred at step two "fails as a matter of law."  *Allman*, 813 F.3d at 1330.

## B.    Step Four

At step four, Plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's subjective complaints and by rejecting the opinion of Plaintiff's treating eye surgeon, Dr. Enzenauer.  *Brief* [#11] at 1.  The Court begins with the issue of Plaintiff's subjective complaints.

### 1.    Subjective Symptoms

Plaintiff asserts that "[t]here are a number of instances, especially with regard to the Plaintiff's right eye, right foot and spine condition, where the ALJ discounts the Plaintiff's subjective complaints in support of his Unfavorable Decision."  *Brief* [#11] at 8.  Plaintiff argues that this was improper because "[t]he Plaintiff's subjective complaints regarding her right eye, right foot and spine are substantiated by objective medical evidence, specifically, MRI studies."  *Id.* at 9 (citing Tr. 390, 422, 1068, 1596-1602).

Social Security Ruling 16–3p, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017), concerns the evaluation of subjective symptoms in connection with disability claims, providing in relevant part:

> In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3).  These factors include:
> 1. Daily activities;

> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.
>
> We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms.

*See Guillar v. Comm'r, SSA*, __F. App'x __, __, No. 20-1169, 2021 WL 282274, at *3-4 (10th Cir. Jan. 28, 2021) (listing and discussing application of these factors). "[T]he regulations do not require the ALJ to discuss every factor listed in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); they expressly provide that she does not need to do so." *Id.* at *4 (citing S.S.R. 16–3P, 2017 WL 5180304, at *8 ("If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case.")). The Tenth Circuit has specifically "held that an ALJ need not engage in a 'formalistic factor-by-factor recitation of the evidence' when evaluating the functional effects of a claimant's subjective symptoms." *Guillar*, 2021 WL 282274, at *4 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In connection with Plaintiff's subjective complaints, the ALJ stated:

The claimant alleged that her vision disorder precludes her from driving at night and that focusing on anything gives her a headache due to the

> constant double vision she experiences. She indicated she has had several surgeries on her eyes to correct symptoms of Grave's disease, but her vision issues affect her ability to read and concentrate. She reported joint pain and problems with her back that affect her ability to remain in one (1) position for very long. She averred that the pain she experiences wakes her up during the night and she has to change positions frequently. The claimant stated that her conditions affect her ability to lift, squat, bend, reach, kneel, climb stairs, and use her hands. Specifically, the claimant indicated she can only walk for about one (1) block before has to stop and rest for twenty (20) to thirty (30) minutes and her foot issues affect her ability to stand, limiting her to standing for about twenty (20) minutes before she has significant pain in her feet, back, and knees. She further indicated she cannot lift over ten (10) pounds. At the time of the [hearing] claimant testified that she can no longer help with the farm animals due to her back condition.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable physical impairments could reasonably be expected to cause the alleged symptoms; however, the evidence of record only partially supports the claimant's statements about the intensity, persistence, and limiting effects of her impairments. The claimant alleged her back impairment coupled with her vision issues and constant pain, preclud[e] her from sustaining any type of full time work. However, the objective medical and clinical evidence fails to demonstrate this level of limitation.

Tr. 46 (internal citations omitted). After thoroughly discussing Plaintiff's medical history, the ALJ concluded:

> As a result of the claimant's combined back, shoulder, and foot impairments, she was limited to light exertional work with the postural and reaching limitations detailed above. . . . In consideration of the claimant's eye-related issues, she was limited to work involving only occasional use of far vision acuity bilaterally and included environmental limitations, such as precluding her from work involving heights and dangerous moving machinery.
>
> The undersigned notes that the claimant is independent in her self-care and activities of daily living, which include caring for her dog and cat, cleaning her home, cooking, grocery shopping, visiting with friends, driving, and watching television. Further, the claimant works part-time cleaning, including vacuuming, washing windows, picking up papers, organizing, emptying the trash, and cleaning the bathroom and recently reported to her provider that she helps to take care of the farm animals.

> . . . The undersigned finds that the record lacks sufficient clinical evidence to support limitations beyond the stated residual functional capacity. The claimant does have physical impairments; however, the actual objective functional limitations are not that significant to render her disabled. Further, the residual functional capacity contemplates and includes limitations to address her complaints to the extent these limitations are supported by the evidence of record.

Tr. 46 (internal citations omitted).

Plaintiff argues in part that the ALJ erred by finding that Plaintiff had "recently reported to her psychologist that she helps to take care of the farm animals." *Brief* [#11] at 16 (citing Tr. 46, 1732). The Court agrees that the ALJ may have misinterpreted this particular record, which is admittedly unclear. It appears that Plaintiff's psychologist may have suggested taking care of the farm animals as a form of treatment Plaintiff could undertake to help her mental health, but there is no clear indication in this record that Plaintiff actually did so. Tr. 1732. In fact, Plaintiff testified that she could no longer help take care of the farm animals. Tr. 66-68, 90. However, even assuming error on this point, the Court finds that the ALJ's thorough decision remains supported by substantial evidence, and thus such error is harmless. *See Wilson*, 602 F.3d at 1140 (stating that "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks omitted)).

An ALJ is not required to discuss every piece of evidence in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, "[t]he record must demonstrate that the ALJ considered all of the evidence[.]" *Id.* at 1010. Here, the record shows that he did so. The ALJ spent significant time discussing Plaintiff's extensive medical history, including Plaintiff's spine, right foot, and right eye impairments, to show

why those impairments were not as limiting as Plaintiff alleged. Tr. 45-46. Plaintiff, on the other hand, also spends significant time discussing her extensive medical history, citing to evidence tending to show that her impairments are as limiting as she has alleged. *See e.g.*, *Brief* [#11] at 9-17. The Court has reviewed the evidence cited by the ALJ and by Plaintiff and finds that this is a classic case of evidentiary conflict, where "the record contains support both for the notion that [Plaintiff] has extreme" limitations, "and the notion [her] . . . limitations are not that severe." *Allman*, 813 F.3d at 1333. In such situations, "[t]he ALJ was entitled to resolve such evidentiary conflicts and did so." *Id.* (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that "the ALJ is entitled to resolve any conflicts in the record"); *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (stating that we may not "displace the agency's choice between two fairly conflicting views") (brackets omitted)). "Concluding otherwise would require us to reweigh the evidence, a task we may not perform." *Allman*, 813 F.3d at 1333 (citing *Qualls*, 206 F.3d at 1371). This is not a situation where the ALJ found that Plaintiff's subjective complaints were completely without basis. Rather, he simply found that Plaintiff's impairments are not so severe that they preclude her from all types of full-time, gainful employment. Because the ALJ's findings are supported by substantial evidence, the Court cannot overturn his conclusion without impermissibly reweighing the evidence. *See id.*

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with the issue of Plaintiff's subjective complaints.

**2.    Medical Opinions**

Here, Plaintiff argues that the ALJ erred by rejecting the opinions of Plaintiff's long-time eye surgeon Dr. Enzenauer.  *Brief* [#11] at 21.  Regarding Dr. Enzenauer, the ALJ wrote:

> The September 14, 2016 and October 22, 2018 opinions of the claimant's treating ophthalmologist, Robert W. Enzenauer, M.D., were also considered.  Dr. Enzenauer initially authored a letter indicating that prior to her surgery, she had double vision making her functionally monocular and causing a twenty-four to twenty-five percent (24-25%) total disability.  He also authored a letter indicating that following her 2016 and 2017 surgeries, from which she had a reasonable result, she has only one (1) small area of single vision looking straight ahead, continued to suffer from double vision, and must use lubricating drops four (4) to six (6) times per hour.  He opined that any activity requiring prolonged use of her open eyes, like sitting at a computer, is virtually impossible for the claimant.  The undersigned notes that the claimant [sic] has not treated the claimant since 2017 and in that the claimant has had a good result from the most recent eye surgery, is independent in activities of daily living, and drives, this opinion is not consistent with the physician's own record or the evidence as a whole.  Therefore, only partial weight was afforded to these opinions.

Tr. 47 (internal citations omitted).

"Generally, a treating physician's opinion receives more weight than other physicians' opinions since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence."  *Brownrigg v. Berryhill*, 688 F. App'x 542, 548 (10th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks and brackets omitted).  The evaluation of a treating physician's opinion requires "a sequential two-step inquiry, each step of which is analytically distinct."  *Brownrigg*, 688 F. App'x at 548 (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)).

"First, the ALJ must consider whether the opinion is entitled to controlling weight."  *Brownrigg*, 688 F. App'x at 548.  This analysis requires findings that the physician's

opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and consistent with other substantial evidence in the record." *Id.* (quoting *Krauser*, 638 F.3d at 1330) (internal quotation marks and brackets omitted).

"Second, if the opinion is not entitled to controlling weight, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in 20 C.F.R. §§ 404.1527 and 416.927 . . . for the weight assigned." *Id.* (internal quotation marks, brackets, and footnote omitted). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Plaintiff argues that the ALJ's "rejection of Dr. Enzenauer's opinion was not consistent with Dr. Enzenauer's medical records or the evidence as a whole." *Brief* [#11] at 21. "An ALJ may decline to give controlling weight to the opinion of a treating physician where he articulates specific, legitimate reasons for his decision, finding, for example, the

opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence in the record." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (alteration, citation, and internal quotation marks omitted)).

As with Plaintiff's subjective complaints, there is evidentiary conflict underlying the issue of whether Dr. Enzenauer's medical opinions are well-supported. The ALJ thoroughly discussed Plaintiff's eye history and pointed to conflict between Dr. Enzenauer's opinions and that evidence. Tr. 46-47. Plaintiff also thoroughly discusses Plaintiff's eye history and points to where Dr. Enzenauer's opinions align with that evidence. *See, e.g.*, *Reply* [#21] at 5-7. As noted above, the ALJ is entitled to resolve situations where there is substantial evidence supporting conflicting conclusions. *Allman*, 813 F.3d at 1333. Here, the ALJ did not disregard Dr. Enzenauer's opinions but, rather, gave them only partial weight. Tr. 47. The Court finds that the ALJ provided adequate reasons to give Dr. Enzenauer's opinions only partial weight by sufficiently demonstrating that Dr. Enzenauer's opinions were partially in conflict with the evidence of record. Tr. 47. Thus, although other interpretations of the evidence are possible, the ALJ's decision to give Dr. Enzenauer's opinion "partial weight" is supported by "[m]ore than a scintilla of evidence." *See Deherrera v. Comm'r, SSA*, __ F. App'x __, __, No. 20-1189, 2021 WL 942778, at *2 (10th Cir. Mar. 12, 2021).

Accordingly, the Court finds that the ALJ did not commit reversible error on this issue.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated: March 31, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge